IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–03374–WJM–KMT

JOSEPH D. CHEAVENS,

     Plaintiff,

v.

PUBLIC SERVICE CORPORATION OF COLORADO, D/B/A EXCEL ENERGY,
MATT JANOWIAK, as Ranger, Columbine District, San Juan National Forest,
KARA CHADWICK, as Supervisor, San Juan National Forest, and
NATIONAL FOREST SERVICE, an agency of the United States, Department of Agriculture,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on "Defendant Public Service Company of Colorado's Motion to Dismiss Plaintiff's Amended Complaint."  (Doc. No. 27 ["Mot."], filed April 20, 2015.)  Plaintiff filed a Response (Doc. No. 30 ["Resp."], filed May 19, 2015), to which Defendant replied.  (Doc. No. 31 ["Reply"], filed June 10, 2015.)

**STATEMENT OF CASE**

     Plaintiff owns land located in Durango, Colorado that adjoins the San Juan National Forest. (Doc. No. 20 ["Am. Comp."] at 2-3.)  Defendant Public Service Company of Colorado ("PSC") applied to Defendant National Forest Service ("NFS") for a Special Use Permit ("SUP") authorizing PSC to use a road ("access road") within the San Juan National Forest in order to access and rebuild a dam known as the Stagecoach Dam.  (Am. Comp. at 1-2.)  NFS issued a

Decision Memorandum ("DM") granting the SUP.  (Am. Comp. at 1.)  The DM provided that PSC could use the access road that went across the San Juan National Forest in order to have access to the Stagecoach Dam.  (Doc. No. 1 at 18 ["DM at 1"].)[1]  The DM anticipated that as part of the project, PSC would widen and strengthen the road and surrounding areas in order to accommodate heavy equipment traffic necessary to repair the Stagecoach Dam.  (DM at 3-5.)

The DM also set out a description of reclamation efforts, which are the focal point of Plaintiff's claims, that would occur after PSC's repair to the Stagecoach Dam was completed. Specifically, the DM provided, in relevant part:

> Road fill materials, such as road base and culverts, will be left in place on private property and on FS, as approved by the FS.  The road will not be maintained after the SUP expires, but the road prism will be left in place for future temporary use, resulting in approximately 2.05 acres of long-term disturbance on FS lands. Topsoil in disturbed staging and stockpile areas, on the dam embankment, and in borrow areas would be replaced after grubbing.  All areas within the limit of disturbance would be reclaimed by preparing the seed bed with a smooth blade grader, bulldozer, or other approved equipment according to the engineering reclamation plan.  Reclamation would include seeding and mulching.  Where the road crosses the boundary between Forest and private property, physical barriers and/or signing will be put in place in accordance with FS requirements to prevent motorized vehicle travel on the access road.

(DM at 5.)[2]

Following the issuance of the DM, Plaintiff and other nearby landowners issued comments, including objections to the proposed re-routing of the access road and concerns raised by other aspects of the DM regarding the flow of water in certain creeks and the viability of nearby wells.  (Am. Comp. at 13.)  They did not raise concerns nor objections regarding the proposed reclamation.  (Am. Comp. at 14.)  NFS and PSC agreed to certain undertakings that

---

[1] Plaintiff attached the DM to his initial Complaint at pages 18-29.
[2] The DM designates the "United States Forest Service" as "FS."  (DM at 1.)

addressed the stated concerns.  (*Id.*)  Plaintiff and the other landowners filed an appeal from the DM, purportedly at PSC's request, and then immediately dismissed the same.  (*Id.*)

In this action, Plaintiff contends that following completion of the project, PSC did not comply with the terms of the DM as it related to reclamation of the access road.  (Am. Comp. at 14-17.)  According to Plaintiff, rather than "reclaiming" the access road, PSC obliterated it, at the approval or request of the NFS and contrary to the DM.  (Am. Comp. at 1, 14-16.)  PSC allegedly deep plowed the surface of the access road, littering it with large rocks and leaving an uneven surface.  (Am. Comp. at 14-15.)  Additionally, PSC left large and small trees scattered across it, thereby blocking easy passage, and removed the four culverts PSC installed during the project.  (Am. Comp. at 15-16.)

Plaintiff asserts that prior to the construction project and reclamation, he and others regularly used the access road for hiking, horseback riding, and mountain biking and that it provided easy access to the nearby lakes and rivers, all of which is now impossible.  (Am. Comp. at 16.)  Additionally, elimination of the access road also prevents fire fighters from being able to easily access Plaintiff's land and other nearby private land, endangering homes and property. (Am. Comp. at 16-17.)

Plaintiff has asserted claims against PSC under the Archaeological Resources Protection Act ("ARPA"), the National Historic Preservation Act ("NHPA"), and the DM.[3]

---

[3] Plaintiff initially asserted a claim against PSC under the Archaeological and Historic Preservation Act, 16 U.S.C. § 469.  In his Response, Plaintiff concedes that such a claim is not viable as asserted against PSC and therefore, the same should be dismissed with prejudice. (Resp. at 28.)  Additionally, the NHPA was repealed, effective December 19, 2014, subsequent to the events underlying this lawsuit.  *See* National Park Service and Related Programs, Pub. L. No. 113-287, §7, 128 Stat. 3094, 3272-77 (2014).  There is no dispute between the parties that

## LEGAL STANDARDS

### 1. *Pro Se* Attorney

Plaintiff proceeds *pro se*, but the Court is not obliged to construe his pleadings liberally as he is an attorney.  (Mot. at 4; Doc. No. 32-1.)  *See Miller v. Wulf*, __ F. App'x __, 2015 WL 7753498, at *1 (10th Cir. 2015); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

### 2. Lack of Subject Matter Jurisdiction

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the

the NHPA and its underlying requirements was in effect at all time periods relevant to this lawsuit.

complaint, without regard to mere conclusionary allegations of jurisdiction. *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*

### 3. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotations omitted).

**ANALYSIS**

**1.  First Claim for Relief - ARPA**

Plaintiff purports to assert a claim under the ARPA arguing that PSC is liable for damage done to the access road, which he contends is an archaeological resource for ARPA purposes. (Am. Comp. at 17-18.)  Plaintiff argues that because the access road is an archaeological resource, PSC was required to obtain a permit under the ARPA prior to undertaking the 2013-2014 work and subsequent reclamation, and that the DM does not equate to such a permit because it does not reference the ARPA.  As a result, Plaintiff contends PSC should be required to put the road back in the condition it was in before the 2013-2014 work was done.  (*Id.*).  PSC has moved to dismiss this claim arguing that the ARPA does not apply to the 2013-2014 work and, assuming *arguendo*, it did apply, the ARPA does not provide Plaintiff with a private cause of action.

The findings section of the ARPA sets forth Congress's intent to prevent "uncontrolled excavations and pillage" and to facilitate orderly access to archeological sites by professionals. 16 U.S.C. § 470aa.  The ARPA and its implementing regulations establish a permitting regime to allow those focused on archaeological resources to maintain access to those resources on federal land.  *See* 16 U.S.C. § 470cc.  However, in 16 U.S.C. § 470kk, entitled "Savings provisions," the ARPA itself clarifies that "nothing in this chapter shall be construed to repeal, modify, or impose additional restrictions on the activities permitted under existing laws and authorities relating to mining, mineral leasing, reclamation, and other multiple uses of the public lands."  16 U.S.C. § 470kk(a).

Here, leaving unanswered the question of whether the access road is an archaeological resource, there is no question that PSC's purpose was unrelated to the excavation or removal of archaeological resources.  Plaintiff argues that the savings provision is limited to "permits in existence at the time of enactment of the [ARPA]."  (Resp. at 16.)  He also contends that the savings provision does not apply to PSC's work because its permit "to cross Forest Service lands to undertake a dam construction project is not similar to mining, mineral leasing, or reclamation."  (Resp. at 16-17.)  The court finds Plaintiff's interpretation of the savings provision unsupported by its plain text.  Further, the applicable permitting regulation is unambiguous in its indication that the savings provision is not so limited in its application:

> No permit shall be required under this part for any person conducting activities on the public lands under other permits, leases, licenses, or entitlements for use, *when those activities are exclusively for purposes other than the excavation and/or removal of archaeological resources, even though those activities might incidentally result in the disturbance of archaeological resources.*  General earth-moving excavation conducted under a permit or other authorization shall not be construed to mean excavation and/or removal as used in this part.

43 C.F.R. § 7.5(b)(1) (emphasis provided).

In *San Carlos Apache Tribe v. United States*, 272 F.Supp.2d 860, 888 (D. Ariz. 2003), the plaintiff brought an action under, *inter alia*, the ARPA to enjoin the release of water from the San Carlos Reservoir because it resulted in the exposure to vandals of Native American cultural items and human remains that lie at the bottom of the Reservoir, leading to their destruction and damage.  *Id.* at 886.  The defendant drew the water in the Reservoir down for irrigation purposes, as part of the San Carlos Irrigation Project ("SCIIP").  *Id.* at 868-70.  The court dismissed the plaintiff's ARPA claim based on its finding that the ARPA did not apply to the facts alleged.  *Id.* at 888.  Based on 43 C.F.R. § 7.5(b)(1), the court held:

> No ARPA permit is required to conduct activities on public lands when those
> activities are entirely for purposes other than the excavation or removal of
> archaeological resources. . . . . This Court finds that the ARPA does not apply to
> Defendants' ongoing operation of SCIIP because these activities are not
> intentional excavation and removal of [archaeological resources]. . . . .
> Defendants' activities are covered by the savings clause.

*Id.* at 888. The court did not question whether the defendants' actions caused the alleged

destruction and/or damage to archaeological resources. Instead, the court looked first to whether

the actions in question implicated the ARPA and found that if not, they were exempt *via* the

savings provision. *Id.* at 888-89. See also *Attakai v. United States*, 746 F.Supp. 1395, 1410–11

(D. Ariz. 1990) (dismissing ARPA claims where no purposeful activities aimed at archaeological

resources were alleged)

In *Franco v. U.S. Dept. of Interior*, No. CIV S–09–1072 KJM–KJN, 2012 WL 3070269,

at *11 (E.D. Cal. July 27, 2012), the plaintiffs, who were members of an Indian tribe, brought

several ARPA claims based on different actions by two federal agencies. First, the plaintiffs

alleged that the United States Forest Service (USFS) began a project to replace a creek bridge

and in doing so, allowed construction workers to cut down three ancient 'grandfather' grapevines

used as medicine by the plaintiffs' tribe for over 100 years, as well as an ancient oak tree. *Id.* at

*2. The USFS allowed a truck ramp to be built leading to the creek, resulting in daily logging

truck traffic that spilled diesel onto the site and into the creek. *Id.* The USFS allowed campers,

hikers, hunters and off-road vehicles to trespass over pre-historic ceremonial areas causing

damage to the site and issued a grazing permit for a 5,000 acre allotment to a rancher, allowing

cattle to destroy/damage a sacred fire pit and riparian area. *Id.* at *3-4. The plaintiffs alleged the

USFS permitted the construction of a bike trail leading to a historic prayer site and permitted

visitors into the Panther Meadow spring, which was listed on the National Register, allowing

damage to be done to both sites. *Id.* The USFS gave tacit approval for a local resort to use a pre-historic village site as an overflow parking lot, which caused damage to the site. *Id.* at \*5. Finally, the Bureau of Land Management allowed members of the general public to use, and thereby degrade, the Shasta Reservoir Indian Cemetery, which the plaintiffs alleged was held in trust for the tribe. *Id.* at \*6. The plaintiffs asserted each of these actions took place in violation of the ARPA because the defendants did not require the third parties to obtain the necessary permits.

The court held that the ARPA requirements did not apply to any of the above actions. *Id.* at \*11. Relying on the savings provision and § 7.5(b)(1) of the regulations, the court held, "[T]he complaint does not allege intentional disturbance of archaeological resources. Rather, in each instance, plaintiffs at most allege degradation of archaeological resources as an incidental effect, or externality from some other activity." *Id.*[4]

In the present case, the court finds that the ARPA does not apply to Plaintiff's claims. Even if the access road is considered an archaeological resource as that term is defined by the ARPA, a point this court does not concede, PSC received a permit for land use related to repairing the Stagecoach Dam and not for the purpose of excavating or removing archaeological resources. PSC's actions are clearly covered under the ARPA's savings provision and related regulation, 43 U.S.C. § 7.5(b)(1), and are not subject to the permit requirements of the ARPA.

---

[4] The court did allow the plaintiffs the opportunity to amend their Complaint related to allegations the USFS "retained possession of artifacts recovered from [a bridge realignment project] without plan or record as required by the ARPA and refuses to disclose the disposition of these items" to the tribe. *Id.* at \*2, 11. The court found that while the claim should be dismissed because the underlying event was "in conjunction with a separately authorized project not directed to unearthing archaeological resources," the plaintiffs had failed to articulate certain aspects of the claim that might have resulted in a viable action. *Id.* at \*11. Here, there are no similar allegations.

**2.  Second Claim for Relief – NHPA**

Plaintiff asserts a claim under the NHPA against PSC based on his contention that PSC's

reclamation work on the access road "does violence" to the Congressional findings that

supported the NHPA's passage.  (Am Comp. at 19.)  PSC requests the court dismiss this claim

because the NHPA does not impose obligations on nongovernmental actors and therefore, as a

private party, PSC cannot violate the same.  (Mot. at 15-16.)  The court agrees.

The "NHPA 'has a fairly broad mandate, in keeping with the longstanding Congressional

interest in historic preservation' and 'requires each federal agency to take responsibility for the

impact that its activities may have upon historic resources, and establishes the Advisory Council

on Historic Preservation . . . to administer the Act.'"  *Nat'l Post Office Collaborate v. Donahoe,*

No. 3:13cv1406 (JBA), 2014 WL 6686691, at *11 (D. Conn. Nov. 26, 2014) (quoting *Bus. &*

*Residents All. of E. Harlem*, 430 F.3d 584, 590 (2d Cir. 2005).  Section 106 of the NHPA

requires that federal agencies "take into account the effect of [any] undertaking on any district,

site, building, structure, or object that is included in or eligible for inclusion in the National

Register [of Historic Places]."  16 U.S.C. § 470f.  The regulations implementing the NHPA

require agencies "to consult with state historic preservation officers ('SHPOs'), make reasonable

and good faith efforts to identify historic properties, determine their eligibility for listing in the

National Register of Historic Places, and assess the effects of a project on such properties."

*Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 356 F.3d 444, 447 (2d Cir. 2004).  The agency

is required to notify and solicit comment from the Advisory Council on Historic Preservation,

*see* 16 U.S.C. § 470f, and consult with the appropriate SHPO "to develop and evaluate

alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects on historic properties."  36 C.F.R. § 800.6(a).

It is well settled that "[n]on federal agencies are not liable for violations of the NHPA" and that a private cause of action under the NHPA does not extend to actions against nonagency defendants.  *Pres. Coal. of Erie Cty. v. Fed. Transit Admin.*, 356 F.3d 444, 455 (2d Cir. 2004) (citing *W. Mohegan Trible & Nation of N.Y. v. New York*, 246 F.3d 230, 232 (2d Cir. 2001)).  *See also Vieux Carre Prop. Owners v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989) ("By its terms, only a federal agency can violate section 470f."); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971) (holding that the NHPA imposes no duties upon state officials but only upon federal officials); *Coliseum Square Assoc., Inc. v. Dep't of Housing and Urban Dev.*, No. Civ.A. 02-2207, 2002 WL 31886808, at *2 (E.D. La. Dec. 18, 2002); *Woonsocket Historical Soc'y v. City of Woonsocket,* 387 A.2d 530, 532 (R.I. 1978) (dismissing action against state officials under the NHPA because "[t]he mandate [of the NHPA] is directed towards heads of federal agencies and departments, not toward state or municipal officers.").  Thus, Plaintiff's NHPA claim has no merit as asserted against PSC.

**3. Third Claim for Relief – Reclamation Contrary to the DM**

Finally, Plaintiff purports to assert a claim against PSC based upon the DM, which he states, in conclusory fashion, has the "force of federal law."  (Am. Comp. at 20.)  In its Motion to Dismiss, PSC argues that Plaintiff has not identified any source of authority indicating that he is allowed to pursue a claim against a private party based on the DM.  (Mot. at 18-19.)  Plaintiff's only response to PSC's argument is to agree that this claim is properly addressed to the other Defendants, but only so long as "PSC in fact was authorized and/or directed by the [other

Defendants] to undertake the reclamation that was in fact undertaken and did not decide on its own to do the reclamation it did."  (Response at 29.)

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Plaintiff has failed to cite any authority, legal or otherwise, establishing that this court has jurisdiction to hear this claim and thus, has not met his burden.  Further, the court has not found any authority indicating that a Decision Memorandum, or similar issuance, from a federal agency provides a cause of action between private parties.

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendant Public Service Company of Colorado's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 27) be **GRANTED**.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge